Moncure, P.,
delivered the opinion of the court.
We will first consider the case of Lacy v. Stamper, &c. There are five assignments of error in the petition of appeal in that case, which we will notice in their order.
1. The first assignment of error is: “because the •securities of Howie, as the administrator of Stamper, are charged with a liability of more than $6,000, the amount of Christian’s and Talley’s bonds, although it was shown that those bonds were not lost by Howie’s neglect, but were good and available, not only at the death of Howie, but when they were subsequently turned over by his representative to Crump, the administrator de bonis non of Stamper.”
As a general rule, it is the duty of d personal representative to collect all debts due to the estate he represents, which can be collected, and to use due and reasonable diligence in making such collection; and if any such debt be lost by not being collected, he and his sureties are liable therefor, if he might have collected it by the use of due and reasonable diligence. This general rule has not been, and cannot be denied, and it is unnecessary to refer to authority to sustain it.
It is not pretended that the estate of Howie, or his sureties, as executor of Stamper, have been charged in this case with a single debt due to the said testator at his death, which was not then perfectly solvent, and *48 ■which might not have been collected by the executor, Howie, by the use of due and reasonable diligence. If, therefore, the general rule before stated be applicable to the case, it follows that the estate and sureties of Howie are liable for all the debts' of said testator so charged to them.
But it is contended in their behalf, that while the debts referred to in the exception were solvent at the death of Stamper, and might have been collected by his executor, Howie, whose estate and sureties are therefore liable for them, yet they were also solvent when L. C. Crump became administrator de bonis non with the will annexed of Stamper, and they came to-the hands of said Crump as such administrator, whose duty it was to collect them, and who might have collected them by the use of due and reasonable diligence; that said Crump is therefore also liable for them; and that his liability is prior and paramount to that of the liability of the estate and sureties of Howie.
It is no doubt true, as a legal proposition, that where there are several successive administrations upon the same estate, and debts due to the estate might have been collected by each of the personal representatives of said estate, by the use of due and reasonable diligence, but were collected by none of them, and were lost by the negligence of each and all of them; while all of them are liable for said debts, their relative liability is in the inverse order of their qualifications as such personal representatives.
It would follow, therefore, if the facts were as contended for in behalf of the estate and sureties of Howie; and the debts referred to in the exception might have been collected by the use. of due and reasonable diligence by Crump, as administrator de bonis *49 non with the will annexed of Stamper, he and his sureties would be liable for said debts prior to, and in exoneration of, the estate and sureties of Howie.
The question then is, whether the fact be as thus contended for.
The liability of Howie’s estate and sureties for these debts is very clear. If they were good and solvent debts when Crump qualified, they were certainly good and solvent debts when Howie qualified as personal representative of Stamper. And for four or five years after the qualification of Howie, there was profound peace throughout the land; the courts of the county were in full operation; there were no stay-laws in forc.e; and there was no obstruction of any kind to the administration of justice in the state. And yet no action was ever brought by Howie for the recovery of any of these debts.
To relieve Howie’s estate and sureties from this clear liability for said debts, by fixing a liability therefor on the subsequent personal representative Crump, the evidence on which the latter liability must depend, ought, certainly, to be very strong.
Crump was very prompt iu the institution of suits for the recovery of said debts. He certainly brought them in due time. Did he prosecute them with due diligence?
In ordinary time of peace he might, and no doubt would, have obtained judgments for the said debts much sooner than he did; and probably might, and would, have collected all or most of them. But he instituted the suits in the midst of the war, which was actively prosecuted for more than two years thereafter. During almost the whole of that period, the county of New Kent, in which the suits were brought, was in the hands of the public enemy, or daily liable to hos *50 tile raids; and sessions of courts in the county were prevented. The records of the courts were removed to Richmond for preservation, and were afterwards destroyed there by the great fire of the 3d of April 1865. After the war, there were still many, and great, difficulties attending the prosecution of suits and the recovery of debts, growing out of stay-laws and other obstructions thrown in the way of suitors.
We cannot therefore say, that according to the evidence afforded by the record, the said Crump did not use due and reasonable diligence to collect the said debts; and certainly we cannot say that the said evidence is sufficient to relieve Howie’s estate and sureties from the clear liability for said debts, by .fixing a liability therefor on Crump.
It seems to be supposed, however, by the counsel for the appellant, that the general rule before stated is not applicable to this case, and that it was not the duty of Howie to collect the said debts, but as the estate was not to be distributed at once among the legatees, but invested and held for the use of the widow and children during her life or widowhood, it was the duty of the executor, instead of collecting the debts and reinvesting the amount, to consider the said debts as investments already made by the testator for the purposes of his will, and to let them stand accordingly.
We do not mean to say that there may not be cases in which an executor, instead of collecting a debt and investing the amount for the purposes of the will, might not very properly let it stand as an investment already made for said purposes. As for example, if in this case a debt had been well secured on real estate, the executor might well have permitted it to stand as an investment already made of so much of the estate. And even if it had been secured by personal security *51 only, provided the security was undoubted, he might have been warranted in not collecting the debt by letting it stand as an investment already made.
But the debts due to the testator at the time of his death in this case were certainly none of them, except as will be hereinafter mentioned, such as might properly have been adopted and continued by the executor Howie, as investments already made for the purposes of his said testator’s will. They were none of them secured on real estate, and for very few of them was there even any personal security. Bor the far largest of the debts, that of John D. Christian, the principal of which was' $2,307.99, and interest to the 31st of December 1857 was $1,657.03, there was no security whatever, either real or personal. Surely the executor would not have been justifiable in letting that debt stand uncollected, and adopting it as an investment already made of so much of the testator’s estate for the permanent purposes of the will. The rest of the debts due to the estate were very numerous, and were comparatively small in amount, and there was no security of any kind for scarcely any of them. Certainly none of them, except as aforesaid, would have been suitable as permanent investments under the will. Hone of them were regarded as permanent investments by the testator, nor by the executor, nor was the said debt of John D. Christian. Besides the fact that they were unsecured, is the fact that a large amount of interest was permitted to accumulate upon them, both by the testator and by the executor, which facts are inconsistent with the idea that they were intended or considered as permanent investments, either by the testator or the executor.
There was certainly nothing in the state of the currency before the war to make it improper or difficult *52 to collect the debts, and there was then ample time to-collect them, and the money might then have been safely and permanently invested on real and personal security. It was the plain duty of the executor t& pursue that course. He was acting not for himself' but for the widow and-infant children of his testator,, who were incapable of acting for themselves. The-law empowered and required him to act for them, and instructed him as to his duties. It will not do to say that if he had collected the money he would probably have held it until- after the war, when it might have been converted into Confederate money and Confederate bonds, and ultimately have perished. It could have goue through that process only by the default and the breach of trust of the executor, who cannot therefore defend himself on that ground.
We are therefore of opinion, that the estate and sureties of Howie, are properly chargeable with the bonds referred to in the first assignment of error, and that the Circuit court did not err in regard to the matter of that assignment.
2. The next assignment of error is, that the court, decreed against the appellant Lacy as one of the-sureties of Howie as executor of Stamper, when he-denied in his answer, all knowledge of having ever-signed the bond as surety for Howie, and called for proof of the fact, and it was not proved.
The records of the courts of New Kent county, including the original bond of Howie as executor of Stamper seem to have been destroyed by fire; and therefore it could not be proved by primary evidence, to wit: the production of the bond, who were the sureties of the executor, and that E. T. Lacy, was one of them. But we think that fact is conclusively proved by secondary and'circumstantial evidence. Exhibit B- *53 filed with the bill, is an official copy made December 20th 1869, of an official' copy of an order of New Kent County court made Hovember 18th 1856, stating that “Robert Howie, one of the executors named in the last will and testament of James Stamper dec’d, appeared in court, and qualified thereto, and together with John D. Christian, Ira L. Bowles, •John Gf. Crump, R. T. Lacy, Wm. C. Talley and Bat.. D. Christian his sureties, who justified as to their sufficiency, entered into and acknowledged a bond in the penalty of $40,000, conditioned according to law, which bond is ordered to be recorded. And liberty is reserved Bat. D. Christian, the other executor, to qualify when he shall think fit.”
Exhibit X filed with the answer of Wms. P. Richardson, is an official extract, made September 9th 1871, from the record of the list of fiduciaries in New Kent County court, which shows that R. T. Lacy was one of the sureties of the said executor.
Commissioner Barham having been required to ascertain and report whether the defendant R. T. Lacy was one of the securities of Robert Howie as •aforesaid, accordingly reported the two exhibits aforesaid as the only evidence which was before him on the subject, and that it appeared from said evidence that said Lacy was one of the said securities. It does not appear that there was any exception to the said report in that respect.
There is nothing in the record to repel or weaken the effect of the evidence aforesaid; nothing tending to show that the defendant Lacy was not one of the •securities; or that there was any other person of the same name in the county, who might have been such security instead of the defendant Lacy. This litigation has been long pending, and the amplest oppor *54 tunity, and the strongest inducement have existed for-introducing countervailing testimony, if any had existed; and yet none has ever been offered.
We conclude, therefore, that the Circuit court did not err in regard to the matter of the second assignment of error.
3. The next assignment of error is, that “ the decree is,-upon its face, palpably erroneous, in that it decreed,, in the first instance and uno flatu, against the administrator of Howie, and the securities of Howie, not only without an effort to make the balance appearing to be due from Howie, before resort should be made to the securities, but actually refusing at the same time, to-direct a sale of Howie’s estate to pay the debt, and without ordering any account of Howie’s estate by his executor.”
Formerly it was determined in several cases, that before an action at law could be maintained against the sureties in the bond of an executor or administrator, there must be, not only a suit against the executor or administrator as such to establish the amount of the debt due from the testator or intestate, but there must be a second action against the executor or administrator personally, suggesting a devastavit, and a verdict and judgment rendered therein for the plaintiff'. In consequence of these decisions, an act. was passed authorizing a suit to be brought against the executor or administrator and his sureties, or either of them, upon their official bond, upon the return of nulla bona on the judgment against the executor or administrator as such, and without the-necessity of any judgment in or action suggesting a devastavit. See 1 Hob. old Pr. pp. 55-57 in which the former law is thus laid down, the said act is set out, and the decisions aforesaid are referred to.
*55 But a suit in equity might always have been, as it now may be, brought by creditors or legatees against the executor or administrator and his sureties, for a discovery and account of assets, and for payment of debts and legacies; in which suit, there might always have been, as there now may be, a decree against the sureties. See 2 Rob. old Pr. pp. 78, and 112, and the cases there cited.
While, however, a court of law, in a proper case for an action in that court, will give a joint judgment against the executor or administrator and his sureties, on which a joint execution will issue, a court of equity will proceed according to its own peculiar principles of administering justice, and generally lay the burden first upon the principal, and subject the sureties only in the event that the decree against the principal is unavailing. In Dabney’s adm’r & al. v. Smith’s legatees, 5 Leigh 13, Tucker P., in an opinion concurred in by the other judges, Cabell and Carr, who sat with him in the case, said: “Such, I take it, is without question, the practice of the court, where such a measure can be adopted ‘without any material delay or injury to the creditor;’ 2 Rand. 400. And, if Buller Claiborne and Isham Dabney (the sheriff to whom an estate was committed for administration, and the deputy who actually administered it—the suit being brought by legatees of the decedent) had been alive at the date of the decree, it ought to have been entered against them, in the first instance. However, they being dead, it was entered very properly against their estates in the hands of their personal representatives ; and on this decree a fieri facias has been returned, nulla bona testatoris. But it is contended, that the plaintiffs should then have proceeded to have the accounts of the administrators of Claiborne and Dab *56 ney settled, in order to a decree against them personally, if a devastavit should be established. I think not. This would indeed be to impose too onerous terms on the creditor. He ought not to be delayed in his recovery until he has .pursued the personal representatives of the principal to the utmost limit of litigation. The surety must be content with his right of subrogation, and take upon himself that pursuit, as the consequence of his having become sponsor for the principal. For a like reason I do not think there was any obligation on the creditor to pursue the heirs of Buller Claiborne,” &c.
We think the principle of that case applies to and governs this, and that according to that principle there was no error in the decree which was made for the payment into bank of the balance due by the representatives and sureties of Howie, as executor of Stamper. Howie had long been dead when the suit was brought, and there could therefore be no execution against the assets of the testator in his hands. There could properly be none, and were not in fact any in the hands of his personal representative Richardson after his death, after which the assets of Stamper, left unadministered by Howie at his death, legally vested in Crump as administrator de bonis non with the will annexed of Stamper. The case of Dabney’s adm'or v. Smith’s legatees, is an express authority to show that before rendering a decree against the sureties of Howie there was no necessity for any further proceedings than were had in the case to establish a devastavit by him of the estate of his testator Stamper, and to fix a liability therefor on any estate of his, for which his administrator, Richardson, may be accountable.
The case of Aylett’s ex’or v. King &c., 11 Leigh 486, *57 .is not in conflict with the case of Dabney’s adm’or &c. v. Smith’s legatees, and certainly was not intended so to be.
In Aylett's ex’or v. King &c., Judge Allen distinguishes that case from Dabney’s adm’or &c. v. Smith’s legatees, the correctness of which he does not question; and Tucker, P., reaffirms much of what was said by him in that case, and says that upon a review of the case he thinks it was properly decided; and he then proceeds to distinguish the two cases, and concurs in the decision which was made in Aylett’s ex’or v. King &c. Roberts v. Colvin, 3 Gratt. 358, was certainly not intended, and cannot have the effect of overruling Dabney’s adm’or &c. v. Smith’s legatees. It takes no notice of that case, is very brief, and was intended no doubt to rest on its own peculiar circumstances.
In the case now under consideration the testator died in 1856, and his estate has since been in the hands of three successive personal representatives. His principal and residuary legatees being his widow and three infant children, have, it seems, been most, or much of the time since, in extreme want and destitution, and been trying to recover what is due to them under the will, "but thus far with little or no success, ■although it is manifest that a very large amount is due to them. They brought their first suit to recover it some time in 1863, and prosecuted the suit until the papers therein were destroyed by fire at the close of the war in April 1865. They brought this suit as soon as they could do so after the war, and during the next .year 1866, and seem to have actively prosecuted it ever since. There have been many decrees for accounts, and many reports made under such decrees, •and many exceptions taken to such reports, and many decisions made upon said exceptions, until the decree *58 was made in 1872, from which this appeal was obtained. By that decree, the amounts due to the plaintiffs from the different personal representatives of the testator were ascertained, and the said amounts were directed to be paid into bank by parties respectively liable therefor. And it is objected in this court, that before there should have been any such decree against the sureties of Howie as executor of Stamper, there should have been further proceedings and further litigation in the court below, to fix some liability for a devastavit on the personal representative of Howie, and on the real estate of Howie, as being primarily liable for the said amounts. Surely there could not be a stronger case than this for the application of much of what was said by Tucker, P., in the two cases before referred to. To send these plaintiffs back to the court below, to engage in renewed litigation under the circumstances, “ would, indeed, be to impose too onerous terms on” them. They ought not to be delayed in their recovery until they have “pursued the personal representatives of the principal to the utmost limit,of litigation. The surety must be content with his right of subrogation, and take upon himself that pursuit as-the consequence of his having become sponsor for the principal.” It was expressly held in that case that it was not necessary to pursue the heirs of the personal representative in exoneration of his sureties, and that the latter may properly be turned over to their right of subrogation in regard to the said heirs. We do not mean to decide that in no case will a creditor or legatee be compelled to exhaust his remedy against the personal representative and heirs of the executor before' resorting to the sureties, or to lay down any general rule on the subject, but merely to say that there are cases in which he will not be so required (as author! *59 ties before cited plainly show), and this is one of them.
But in this case the decree appealed from was not final, but merely interlocutory. The case is still pending in the court below, where perfect justice can yet be done; either at the suit of the plaintiffs, or by subrogation at the suit of the sureties, who may file their cross-bill, if necessary, and obtain, in that or some other way, all the relief to which they are entitled. After what has been done, and the length of time employed, and labor and money expended, in litigation; and after ascertaining what was unquestionably due by the representatives and sureties of Howie as executor of Stamper to the plaintiff, it was meet and right that there should be a decree for that amount, and for its payment into bank, by parties undoubtedly liable therefor; leaving ulterior liabilities over, if any, to be adjusted between the parties inter se, as may be equitable. It was not expected or intended, that each of the parties decreed against would pay into bank the whole amount of the decree. The chief object of the decree was to ascertain and settle the amount due to the plaintiffs. Ho execution can issue on the decree without further order; certainly there cannot be a joint execution against the said personal representatives and sureties. The decree against the former is de bonis testator is, that against the latter de bonis propriis. All or any of both classes, or either, have a right to make payment into bank, and thus relieve themselves from liability, and after doing so to -assert any liability over to them to which they may be entitled. Beyond all question, the estate of the principal debtor, if any, will be sufficient to pay but a small portion comparatively, of what is due to the plaintiffs. The larger portion of it—perhaps at least four-fifths—will have to be paid by the sureties, ultimately, if not directly: *60 and yet they do not offer to pay a dollar into bank, but appeal from the whole decree. ■ If they had made • a reasonable payment into bank, there can be no question but that the plaintiffs would have been willing to wait for the balance until an opportunity was afforded the sureties to proceed against parties supposed to be primarily liable; or the court would, even without such consent, have afforded such opportunity. The sureties, to the extent of any payment they may make in discharge of their liability, will of course be entitled to be subrogated to the rights of the plaintiffs, against those who are primarily liable; and even be fore making such payment, they are entitled, by a proceeding quia timet, to compel those parties to account for and pay any money for which they may be liable, in exoneration of the sureties. In fact, so far as parties and subjects primarily liable for the claim are concerned, the sureties have heretofore, in effect, been coplaintiffs with the legatees in the prosecution of this suit, and will no doubt hereafter continue to be so, until the object of the suit shall have been, as far as possible, fully attained.
We are therefore of opinion that the Circuit court did not err in regard to the matter of the third assignment of error.
4. The next assignment of error is, that the decree is against that party for the whole amount, without any provision that if it be paid by one it shall not be paid by the other.
This has already perhaps been sufficiently answered. All that was necessary to be done to satisfy the decree was the payment of the amount into bank, which could be done by all, or any, or either of the parties directed to make such payment. When that was doné by any, or either, it was done as to all, so far as the *61 plaintiffs were concerned, although the parties or part}' making such payment might have recourse over against other parties. We think the court did not err in omitting to make such a provision as is referred to in this assignment of error.
5. The next and last assignment of error in the petition is, that no refunding bond is required.
The decree was interlocutory and. not final. The money was not decreed to be paid to the legatees'but into bank, where it will be still liable to creditors, and more accessible to them than it would be in the hands of the debtors. Such provision as may be proper in regard to refunding bonds may be made by decree in the cause hereafter.
But besides the assignment of error contained in the petition, other objections were made to the decree in the brief and argument of the counsel of the appellant Lacy, which objections will now be noticed :
1. The first of these objections is, that Howie paid $186.97 to Pollard & Frayser for necessaries for Mrs. Stamper and her children, and $62.50 for repairs to a mill on her account, which payments ought to have been allowed, but were disallowed by the commissioner as credits to Howie in the settlement of his account as-executor of Stamper.
As to the item of $62.50, it appears that it has already in fact been allowed to the said Howie as a credit in his account. It constitutes an item in the account of Howie against Mrs. Stamper, marked F, and referred to in the answer of Wms. P. Eichardson; the said item being: “1859, July 19—To cash paid Mr. Wilcox for repairs to mill $62.50;” and it corresponds precisely in amount, date, names, &c., with the receipt referred to in the defendant’s thirty-fourth exception to the commissioner’s report, on which exception the- *62 said first objection is in part based. The said account of Howie, amounting to $2,189, constitutes a part of the sum of $2,830, allowed to said Howie in the decree appealed from as amount of payments and advances made by him to Mrs. Stamper under the will of her husband, the said James Stamper. As to the said sum of $62.50, therefore, the objection must be overruled.
As to the item of $186.97, it does not appear that it has already been allowed as a credit to Howie, though it may, possibly, have been included in the item of $300 charged in the account of payments and advances aforesaid as “ amount paid Martha J. Stamper by Robert Howie, ex’or of James Stamper dec’d, 30th June, 1860.” To be sure that date does not correspond with the date of the receipt to Howie for the $186.97, which is September 2d 1859. But it is not probable that so large an item would have been forgotten by the parties in the settlement between them which appears to have been on the 18th June 1860, which is the date of the receipt for the $300. It is possible, however, that the said item of $186.97 may have been overlooked and never allowed as a credit to Howie in the said account of payments and advances, as it ought to have been; and therefore it seems to be proper that there should be an enquiry by a commissioner on the subject, in order that such further action may be had in regard to it as justice may require.
2. The next of these objections is, that “it is not yet ascertained that the bonds, or at least many of them, delivered up by the administrator of the executor of Howie to Stamper’s administrator d. b. n. are not good, either in whole or in part.' They have not been prosecuted to judgment and execution.”
These and all other matters connected with the estate of Stamper were long the subjects of enquiry and *63 settlement before a commissioner, who reported upon the evidence before him which of the bonds and other evidences of debt due to Stamper’s estate were solvent and which insolvent, or supposed to be so, when they came to the hands of Grump as administrator d. b. n., or had since become so: and the fullest notice was given by the commissioner of his action in the premises to all parties concerned, and the amplest opportunity afforded them to appear before him and exhibit such evidence as they thought proper; and yet no attempt was made by any of them to show that his action was wrong in regard to the question of the solvency or insolvency of the said debts. The presumption therefore is, that the report of the commissioner on that subject is right, and the decree appealed from was properly rendered accordingly. If, however, any of the said debts are still in fact solvent, they have not been released by the action of the court, but their payment may be enforced at the instance of any party concerned, who will be aided by the court in such enforcement. This objection therefore must be overruled.
3. The next of these objections is, that “the- court held that Stamper’s executor should not have credit for his payment of the debts due by Stamper, as one of the firm of Stamper & Williams, unless it should appear that Williams the surviving partner was insolvent. And it appearing the latter was not insolvent, the executor was denied credit for his payments— which were large—of the debts of Stamper as one of the'firm of Stamper & Williams.”
The firm closed their business in September or October 1850, and Stamper, it seems, wras to wind up the partnership, and took charge of the bonds and accounts for collection. This matter remained unset- *64 tied at Stamper’s death, in 1856, after which Howie,, his executor, tendered the bonds and accounts due Stamper & Williams which were in Stamper’s hands to Williams as surviving partner; but at Williams’ request, and as Stamper’s estate was entitled to one-half the amount, Howie agreed to retain and collect them, and was to be paid therefor by the firm. The money received and paid by Howie on account of this partnership, was not introduced into the account of Howie as executor of Stamper, and no account has ever been taken to show whether Howie was a debtor or creditor-in regard to that transaction. The commissioner and court below seem to have regarded this transaction as an agency of Howie for the firm of Stamper & Williams, or rather for Williams as surviving partner, and as therefore not properly belonging to the account of Howie as executor of Stamper. This seems to be a correct view of the case, and at all events it is now too-late to attempt to adjust this stale transaction of account. The partnership ended in 1850. Stamper-might have had a settlement in his lifetime, which ended in 1856. His executor Howie might have had a- settlement in his lifetime, which ended in 1862. It is too late now to have a settlement; and it was too-late in 1872, when the decree appealed from was rendered. This objection therefore must be overruled.
4. The fourth and last of these objections is, that “if the sum found'chargeable to the executor Howie be so chargeable, he is entitled to an abatement of interest on the same from the 17th of April 1861 to the 10th of April 1865. Code of 1873, ch. 173, § 14, page 1120.”
The provision of the Code here referred to is as follows: “That in all suits for the recovery of money,, founded on contracts, express or implied, or on causes *65 of action, or on liabilities which were entered into or existed, or where the original consideration accrued prior to the 10th day of April 1865, it shall be lawful for the court or jury by whom the suit may be tried, to remit the interest upon the original debt found to be due or any part thereof, for the period commencing on the 17th day of April 1861, and ending on the 10th day of April 1865, or for any portion of said period,” &c.
This question was not raised in the court below; nor even in the petition for an appeal; but for the first time on argument before this court. Still, a majority of the court is of opinion that it was not raised too late; and that, under the peculiar circumstances of this case, there ought to be an abatement of interest during the period aforesaid. The condition of things in the county of New Kent, and the rest of the peninsula during the war, was such as to render it extremely difficult, if not impossible, to make money productive of any interest during that period; and the majority of the court consider that it would be too harsh, to subject a fiduciary residing in that locality during that period, and his sureties, to the payment, not only of the principal, but also of the interest during that period, of a debt not collected by him, but lost by his default in not collecting it. The majority of the court, therefore, without intending to lay down any general rule as to the construction and effect of the act aforesaid, is of opinion that in this case and all others precisely like it, there ought to be an abatement of interest as aforesaid. The objection therefore is sustained.
Having considered and disposed of all the questions arising in the case of Lacy v. Stamper &c., we will now take up the case of Crump v. Stamper &c. *66 In the petition for an appeal in that case there are two assignments of error, which we will notice in their order.
1. The first assignment of error by this petitioner in the decree complained of (in addition to the errors assigned in the petition of the appellant Lacy, of which this petitioner claims the benefit so far as they may affect his rights) is “that it charges this petitioner with the bond of B. P. Crump and John G. Crump, amounting to $497.80 of principal, and $543.48 of interest, at the date of the commissioner’s report—December 31st, 1866; and the bond of J. A. Clayton and John D. Christian, amounting to $369.55 of principal-, and $129.47 of interest at same date.”
Two very striking facts in regard to this fiduciary are prominently presented on the face of this record: first, his general diligence in endeavoring to collect the debts due to his testator’s estate; and, sécondly, the extraordinary difficulties with which he had to contend in making the effort to collect. He qualified as executor in the midst of the war—in December 1862. His testator lived and died in the county of New Kent; which was in the hands of the public enemy, or daily liable to be overrun and plundered by them, from the time of his qualification until the end of the war. It does not appear that there was more than one session of any court in that county during that period, and that was a session of the Circuit court.
This fiduciary, directly after qualifying as such, consulted counsel, and acted in accordance with his advice; and accordingly brought suits immediately for the recovery of all debts due to the estate which were considered solvent, and which were believed to be due and unpaid. And he seems to have prosecuted these *67 suits with all the diligence which he could use, consistently with the obstructions which the extraordinary state of the times interposed in his way, during the whole period of his administration. On that subject the testimony of Wms. P. Richardson, cross examined •by A. R. Courtney, counsel for L. C. Crump, was as follows:
1st question by A. R. Courtney. Was the state of public business in the county of New Kent, in the year 1862, when the Pederal army, under General McClellan, passed through said county, to the end of the war, such as to permit of the transaction of business in the 'courts ?
Answer. I think not. Agitation, excitement and confusion prevailed to such an extent, that no public business could be prudently or discreetly attended to.
2d question by same. Were any regular courts held in this county during th.e interval aforesaid?
Answer. I think that Judge Gregory undertook to hold court in 1863, but the courts were so irregular and uncertain that no business could be transacted with any satisfaction. During that interval raids were constantly being made by the enemy into this section, and persons did not know whether courts would be held or not.
3d question by same. Would you have brought suit in this county during the period aforesaid upon any claim due to you personally?
Answer. I would not have thought of it.
4th question by same. Do you know anything of the conduct of Dr. L. C. Crump, as administrator of the estate of James Stamper, deceased, in collecting and securing the assets during the period aforesaid ?
Answer. I know, of my own knowledge, that Dr. Crump was very prompt in getting me to turn over to *68 him the papers of James Stamper, deceased. I think he was more diligent than most any other person would have been under the circumstances.”
With this strong evidence of extraordinary diligence-in the discharge of his fiduciary duties generally, the strong presumption is that he used due diligence in the discharge of all of them; and strong evidence to the contrary ought to be required to counteract this presumption in any particular case.
We have seen that this fiduciary has been charged by the decree of the court below with two debts, each of quite a large amount, both of principal and interest,, as having been lost by his neglect, viz: the debts of B. P. Grump and John G. Grump, and of J. A. Clayton and John D. Christian. Were they in fact lost by his. neglect? and is he accountable for them ? We think not, and now let us enquire as to each of them; and 1st as to the debt of the Crumps. Ho action was brought to recover this debt during the war, because the administrator, Crump, knew that it was disputed, was informed and believed that nothing was due upon it, and did not believe that a trial could be obtained during the war of any suit in which there would be a contest. Bat. D. Christian being enquired of as to the indebtedness of the estate of Stamper to John G. and B. P. Crump, answered thus: “I have heard Bev.. P. Crump and Robert Howie each say that James Stamper, as the agent of the said B. R. and J. G. Crump, had sold a negro man belonging to the estate of Benedict Crump, deceased, the brother of the said J. G. and B. P. Crump, and that he was indebted to the said J. G. and B. P. Crump on that account. I think that the negro sold by Stamper was worth about $500.” L. C. Crump testified that John G. Crump died in May 1860. And being asked “ Did you think, *69 while acting as administrator of James Stamper, that anything was due on the bond of J. G. and B. P. Crump, and if not what reason had you for so think- ■ ing?” answered “ I did not, upon the grounds that B. P. Crump stated to me that there was not a cent due from him or them to the estate of James Stamper, but, ■upon the contrary, that Stamper’s estate was indebted to them on account of the sale of a negro, which was sold by Stamper, as the agent for the said John G. and B. P. Crump; and, furthermore, Robert Howie, the first representative of James Stamper, was also the representative of John G. Crump, and I presume that he would have paid the said bond if anything was due. I, however, brought suit against B. P. Crump on these bonds immediately after the war, because advised by my counsel that it was safe to do so; and Bev. P. Crump did not defend the suit, because he had conveyed his property before the trial of the suit; and if I had sued upon the bond during the war I could not have gotten judgment.” "We think that L. C. Crump is not liable for this debt.
2dly, as to the debt of J. A. Clayton and John D. Christian. This debt was perfectly solvent at the commencement of the war. Bach of the debtors had ample estate, real and personal, for its payment. Clayton lived in Surry, and Christian in New Kent counties, on different sides of the James river. Clayton was examined as a witness in the case, and being asked by the counsel for L. C. Crump “Was there any arrangement between you and John D. Christian, your coobligor in the bond before mentioned, as to which of you should pay it?” answered : “ The last time I was in the county I paid to Robert Howie, the executor of James Stamper, $200 in part of said bond, and at that time there was an agreement between *70 John D. Christian and myself that he was to pay the balance due upon said bond. I apprised Robert Howie of the agreement made by John D. Christian and myself, and he said that it was all right. John D. Christian was largely indebted to me at the time of said arrangement, and at the time of his death.” Ho action was brought upon this bond during the war against both or either of the obligors. There was the same, or nearly the same difficulty in suing, and from the same cause in Surry as in New Kent county, and there was no postal, and little other communication between the two counties during that period. Had Christian been sued upon the bond, judgment would' probably not have been recovered, as judgment was not recovered on his other bonds on which he was sued until after he became insolvent, he having set up a claim of set-off to the bonds, which would no doubt, have been set up, and with the same effect to the said bond of Clayton and Christian. We think that L. C„ Crump is not liable for this debt. He had no apparent motive but to do his duty both in regard to this and the before mentioned debt, and he seems to have acted in regard to both in the most perfect good faith.
2. The 2d and only other assignment of error in the petition of L. C. Crump is, that the decree appealed from “requires him to deposit in bank to the credit of this cause the sum of $1,489.16, amount of the two. bonds with which he is charged as hereinbefore stated* the court reserving for future decision the question whether the payments made by him to Martha J. Stamper shall be deducted therefrom on account of her share in the estate of James Stamper dec’d.”
Being of opinion that L. C. Crump is not chargeable with the amount of either of the said two bonds, *71 the foundation of the 2d assignment of error is taken away, and it is therefore unnecessary to consider it.
In regard to the questions discussed in the brief of the counsel for L. C. Crump in addition to those presented by the petition of appeal, they do not now arise, or will be disposed of by the court below, after the case goes back to it.
But L. C. Crump not being chargeable with the amount of the said two bonds of B. P. and John G. Crump, and J. A. Clayton and John I). Christian, a question now arises whether it does not result therefrom that Howie and his sureties as executor of Stamper are chargeable with the said amount?
We are of opinion that they are not, and that the same-or nearly the same reasons which exempt L. C. Crump also exempt them from such liability.
In regard to the bond of the Crumps, it appears that there was probably nothing due thereon, and that probably nothing would have been recovered by Howie if he had brought suit thereon. At all events while it might have been safer and better for Howie to have brought such a suit though at the risk of subjecting the estate to the loss of costs, yet we think it would be too harsh under the circumstances to subject him and his sureties to the payment of the debt on the ground of its having been lost by his neglect, especially as he seems to have acted with perfect good faith in the matter.
In regard to the bond of Clayton and Christian it was a perfectly good debt at the death of Stamper and continued to be so until the end of the war, by the disastrous effects of which, Clayton the principal debtor, if not Christian the surety also was totally ruined. This debt was so good and so secure when it came to the hands of Howie as executor that he *72 would have been justifiable in not calling it in, but' letting it stand as an investment already-made for the benefit of those who were entitled to the profits of the estate under the will of the testator. We therefore think in this case also that it would be too harsh under the circumstances, to subject Howie and his sureties to the payment of this debt, on the ground of its having been lost by his neglect, especially as he seems to have acted with perfectly good faith in the matter.
It does not appear from the record whether payment has ever been made of the three hundred dollars directed, by decree made in this cause on the 17th day of November 1868 to be paid by Wms. P. Richardson administrator of Robert Howie to Martha J. Stamper, or of the like sum of three hundred dollars directed by decree made in this cause on the 15th day of November 1869, to be paid in like manner. The presumption is that these payments have been made; and if so, credit ought of course to be given therefor, on the debt due by the estate of Howie to the estate of Stamper. At least there ought to be an enquiry on the subject by a commissioner, in order to such further action by the court as may appear to be proper.
The result of the foregoing opinion is, that the decree appealed from must be affirmed in part and reversed in part according as it is consistent, or in conflict, with the said opinion; with costs to the appellants respectively; but to be paid out of the estate of Stamper; and as to the costs of the appellant Lacy, to be credited on, and deducted from, the debt due by Howie and his sureties to the estate of Stamper. And the case ought to be remanded to the court below, in order that an enquiry may be made *73 by a commissioner of the court in regard to the sum ■of $186.97, which appears to have been paid by Howie to Pollard and Prayser for necessaries for Mrs. ■Stamper and her children, and for which it is charged no credit has been given to the estate of Howie. Also an account may be taken by said commissioner of the interest which accrued on the debt due by Howie as executor of Stamper during the period commencing on the 17th day of April 1861, and ending on the 10th day ■of April 1865, in order that there may be an abatement ■of the amount of said interest according to the foregoing opinion. Also an enquiry may be made by said commissioner in regard to the payment of said two sums of $300 each, under the said decrees of the 17th day of November 1868 and the 15th day of November 1869; and that-further proceedings maybe had to a final decree, in conformity with the foregoing opinion.
The decree was as follows:
The court is of opinion, for reasons stated in writing, and filed with the record, that the sum of one hundred and eighty-six dollars and ninety-seven cents, paid by Robert Howie, executor of James Stamper, deceased, •on the 2d day of September 1859, to Pollard and Prayser for necessaries bought of them for Mrs. Martha J. Stamper and her children, ought to have been, if it was not, deducted from the interest on the balance due by said Howie, as executor of said Stamper. It may possibly have been included in the sum of two thousand eight hundred and thirty-one ■dollars deducted, according to the said decree, from the said interest, for payments and advances made by said Howie to Martha J. Stamper. If so, that matter is all right; but, if not so, the said decree is erroneous .in that respect.
*74 The court is further of opinion that there ought to have been an abatement of interest on the balance of principal due from the estate of Robert Howie to the estate of James Stamper, for the period commencing on the 11th day of April 1861, and ending on the 10th day of April 1865; and no such abatement having-been made by the said decree, it is erroneous in that, respect.
It does not appear from the record whether payment has ever been made of the three hundred dollars directed by decree rendered in this cause on the 17th day of November 1868, to be paid by Wms. P. Richardson, administrator of Robert Howie to Martha J. Stamper, or of the like sum of three hundred dollars,, directed by decree rendered in this cause on the 15th-day of November 1869, to be paid in like manner. The presumption is, that these payments have been made, and if so, credit ought, of course, to be given therefor on the interest of the debt due by the estate of Howie to the estate of Stamper, and there ought to be an enquiry on the subject by a commissioner, in order to such further action of the court as may be-proper.
The court is further of opinion that the Circuit court erred in charging Leonard C. Crump, administrator de bonis non, with the will annexed of James Stamper, deceased, with the bond of B. P. Crump and John G-. Crump, amounting to $497.89 of principal, and $543.48 of interest, at the date of the commissioner’s, report, December 31st, 1866, and the bond of J. A. Clayton and John D. Christian, amounting to $369.55-of principal, and $129.47 of interest, at the same date; and in ordering the said L. C. Crump to deposit in the State Bank of Virginia at Richmond, to the credit of' this cause and subject to the order of the said court* *75 the sum of fourteen hundred and eighty-nine dollars, with legal interest on six hundred and thirty dollars and forty cents, from the 31st of December 1870 until so deposited.
The court is further of opinion that so much of the decree appealed from, as is in conflict with the foregoing opinion, is erroneous, and that there is no error in the residue of the said decree. Therefore it is decreed and ordered that so much of the said decree as is above declared to be erroneous, be reversed and annulled, and the residue thereof affirmed; and that the appellees, Martha J. Stamper, and her children, James Stamper, John Stamper, and Catherine N. Stamper, pay to the appellant, Richmond T. Lacy, his costs by him expended in the prosecution of his appeal aforesaid here, for which said costs no' execution is to be issued,, but the same are to be credited on and deducted from the interest on the debt due by Howie and his sureties to the estate of said Stamper.
And it is further decreed and ordered that this cause be remanded to the said Circuit court in order that an enquiry may be made by a commissioner of the court in regard to the sum of $186.97 as aforesaid: and also that an account may be taken by said commissioner of the interest which accrued on the debt due by Howie, as executor of Stamper, during the period commencing on the 17th day of April 1861, and ending on the 10th day of April 1865; and also that an enquiry may be made by said commissioner in regard to the payment of said two sums of $300 each, under the said decrees of the 17th day of November 1868, and the 15th day of November 1869; and that further proceedings may be had to a final decree in conformity with the foregoing opinion.
No execution can properly be issued upon the decree *76 appealed from without a further order of court for that purpose; and if it shall appear to the court that in a reasonable time payment of any portion of the balance due by the estate and sureties of Howie to Stamper’s estate can be recovered of the estate of Howie in any proceeding which may be instituted and carried on in this suit, by the sureties of Howie or their representatives, or any of them, enforcement, by execution or otherwise, of so much of the said decree as may not exceed the probable amount of such portion, may be delayed by the court for a reasonable time to afford an opportunity for such a recovery.
Which is ordered to be certified to the said Circuit court of New Kent county.
Decree affirmed in part and reversed in part.